UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **J.G.G.**,<br><br>Petitioner,<br><br>– against –<br><br>**KENNETH GENALO,** in his official capacity as Field Office Director of New York, Immigration and Customs Enforcement; **ANTOINE FRAZIER,** in his official capacity as Acting Warden of the Metropolitan Detention Center; **DAVID J. VENTURELLA,** in his official capacity as Senior Official Performing the Duties of the Director, U.S. Immigrations and Customs Enforcement; **MARKWAYNE MULLIN** in his official capacity as Secretary of Homeland Security; **TODD BLANCHE,** in his official capacity as Attorney General,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER**<br><br>26-CV-5027 (AMD) |

**ANN M. DONNELLY**, United States District Judge:

On May 15, 2026, U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP") officers arrested and detained the petitioner after he was released from criminal custody at the Nassau County Correctional Center in East Meadow, New York. (ECF No. 1 ¶ 1; ECF No. 9-2 ¶¶ 12–17.)[1] He is currently detained at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (ECF No. 1 ¶ 2.) The petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (*Id.* ¶ 9.) The Court grants the petition, as explained below.

[1] The Court refers to ICE and CBP collectively as the "Department of Homeland Security" or "DHS."

## BACKGROUND[2, 3]

The petitioner, a native of El Salvador, entered the United States without inspection in 2003. (*See id.* ¶¶ 22–23; *see also* ECF No. 9-2 ¶¶ 5–7.) For twenty-three years, he has lived in Westbury, New York, with his longtime partner and their three U.S.-citizen daughters. (ECF No. 1 ¶ 24.) On February 11, 2026, he pled guilty to criminal sale of a controlled substance in the third degree under N.Y.P.L. § 220.39.01; he was sentenced to eight months' imprisonment, but his sentence was subsequently reduced to 60 days' imprisonment, five years of probation, and a $375 fine. (*Id.* ¶ 31; ECF No. 9-2 ¶¶ 8–9, 11; *see also* ECF No. 9 at 9–13.) On February 26, 2026, ICE "received an Immigration Alien Response" regarding the petitioner's criminal case and determined that it "needed further review" to decide whether he was "subject to ICE enforcement action." (ECF No. 9-2 ¶ 10.) On May 13, 2026 — two days before the petitioner's sentence was scheduled to end — an ICE officer interviewed the petitioner at the correctional center and established that he was in the United States unlawfully. (*Id.* ¶ 12.) That day, ICE issued a Form I-200, Warrant for Arrest of Alien ("Form I-200 warrant"), a detainer notice, and a Notice to Appear ("NTA") for removal proceedings "that charged Petitioner with being inadmissible pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act [('INA')], as being an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (*Id.* ¶¶ 13–15; *see also* ECF No. 9 at 15–25, 36–42.) However, ICE acknowledges

[2] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 479 n.1 (E.D.N.Y. 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 402 n.1 (S.D.N.Y. 2025).

[3] Having reviewed all the submissions, the Court finds that the petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025); *see also* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require").

that it "cancelled" this NTA, because it "contained incorrect information." (ECF No. 9-2 ¶ 15.) The May 13th NTA did not include the date and time the petitioner was to appear before an immigration judge, the petitioner's date of birth was incorrect, and the certificate of service was blank. (*See* ECF No. 9 at 15–17.)

At 9:30 a.m. on May 15, 2026, DHS agents arrested the petitioner when, having served his sentence on the state court case, he was released from Nassau County Correctional Center. (ECF No. 9-2 ¶ 17.) They transported him to "Nassau County ICE [I]ntake in East Meadow, New York" for further processing. (*Id.* ¶ 18.) The petitioner was then "processed and served" with the Form I-200 warrant. (*Id.* ¶ 19; *see also* ECF No. 9 at 19–20.) At 10:58 a.m., a CBP agent conducted a "custody determination" and concluded that the petitioner did not establish that he did "not pose a danger to persons or property." (ECF No. 9 at 31, 33.) The sole basis for the agent's decision was this: "02/11/2026: Criminal Sale Controlled Substance 3rd: Narcotic Drug - Convicted." (*Id.* at 33.) The petitioner requested review of the custody determination by an immigration judge. (*Id.* at 31.) At some point that day — the government does not say when — DHS agents issued and served the petitioner a superseding NTA, which included the same charges as the May 13th version. (ECF No. 9-2 ¶ 21; ECF No. 9 at 6, 27–29.) This version also included a date and time for the petitioner to appear. (ECF No. 9 at 27–29.)[4]

DHS agents took the petitioner back to the Nassau County Correctional Center. (ECF No. 9-2 ¶ 22.) He was subsequently transferred to the ICE New York City Hold Room in Manhattan, to the Delaney Hall Detention Facility in New Jersey, and then to the MDC, where

---

[4] ICE claims that it filed the superseding NTA with the Executive Office of Immigration Review ("EOIR") on May 21, 2026. (ECF No. 9-2 ¶ 25.) According to the petitioner, however, the superseding NTA attached to the government's response does not match the NTA filed with the EOIR; the version filed with EOIR is missing signatures on the certificate of service. (ECF No. 10 at 4; *see also* ECF No. 1-1.)

he is currently detained. (*Id.* ¶¶ 23–25.) His removal proceedings are pending; he has filed claims for asylum and withholding of removal. (ECF No. 1 ¶¶ 39–42.) A merits hearing on that application is scheduled for September 24, 2026. (*Id.* ¶ 42.)

On August 17, 2026, the petitioner filed this petition for habeas relief. (ECF No. 1.) The Court ordered the government to show cause why the petition should not be granted. (*ECF Order dated Aug. 18, 2026.*)[5] On August 21, 2026, the government filed its opposition to the petition and response to the Court's Order to Show Cause (ECF No. 9), along with a copy of the petitioner's records from Nassau County Court (*id.* at 9–13), the May 13th NTA (*id.* at 14–17), the Form I-200 warrant (*id.* at 18–20), an "Immigration Detainer – Notice of Action" form (*id.* at 21–25), the May 15th NTA (*id.* at 26–29), a Notice of Custody Determination (*id.* at 30–31), a custody determination worksheet (*id.* at 32–34), two Form I-213s, Record of Deportable/ Inadmissible Alien (*id.* at 35–42), property receipts (*id.* at 43–45), a declaration by the MDC's clinical director, Bruce Bialor (ECF No. 9-1), and a declaration by an ICE Acting Supervisory Detention and Deportation Officer (ECF No. 9-2). The petitioner replied on August 24, 2026. (ECF No. 10.)

## LEGAL STANDARD

A district court is empowered "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality

[5] The Court also ordered the government not to remove the petitioner from the United States or transfer him out of the Eastern District of New York during the pendency of these proceedings. (*See ECF Order dated Aug. 18, 2026*.)

of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

In seeking a writ of habeas corpus, the petitioner alleges that the government violated the INA, 8 U.S.C. §§ 1226(a), 1357, and its implementing regulations, the Fourth Amendment, the petitioner's procedural and substantive due process rights under the Fifth Amendment, the Administrative Procedures Act, and the *Accardi* doctrine. (ECF No. 1 ¶¶ 89–127.)[6]

### I. Section 1226(a)

Section 1226(a) states in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General —
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on —
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole.

8 U.S.C. § 1226(a). In short, to arrest and detain a noncitizen lawfully under Section 1226(a), the government must do two things: (1) get a valid warrant, *Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) ("[Section 1226(a)] authorizes detention only on a warrant issued by the Attorney General leading to the alien's arrest." (citation modified)); and (2) make an individualized

[6] The petitioner argued that the government detained him in violation of 8 U.S.C. § 1225(b)(2). (ECF No. 1 ¶¶ 114–17.) The government responded that it detained the petitioner under 8 U.S.C. § 1226(a), not Section 1225(b)(2). (ECF No. 9 at 1–6.) In his reply, the petitioner asserts that the detention also violates Section 1226(a). (*See* ECF No. 10.)

custody determination, before or contemporaneous with the arrest, about whether detention is appropriate based on an assessment of danger and flight risk, *S.G.V. v. Genalo*, No. 26-CV-2893, 2026 WL 1492770, at *1 (E.D.N.Y. May 28, 2026). The petitioner alleges that DHS did not comply with either condition. He maintains that the warrant DHS used to justify his arrest was invalid because it did not comply with the applicable regulation — 8 C.F.R. § 1236.1. (ECF No. 10 at 3.) He also challenges the custody review. (ECF No. 10 at 1–3.) He claims that the officer did the custody review only after DHS had already decided to detain him. (*Id.* at 2.) Moreover, the officer based the decision "solely on the fact of his drug-related conviction." (*Id.* at 3.) Finally, DHS did not give the petitioner a "meaningful 'opportunity to demonstrate his lack of dangerousness.'" (*Id.* at 2 (quoting *Terrero v. Tsoukaris*, No. 26-CV-869, 2026 WL 607917, at *2 (E.D.N.Y. Mar. 4, 2026).)

According to the government, DHS was justified in arresting the petitioner because it had the Form I-200 warrant. (*See* ECF No. 9 at 19.) Under 8 C.F.R. § 1236.1(b)(1) a noncitizen "may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest" "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed." 8 C.F.R. § 1236.1(b)(1); *cf. Abel v. United States*, 362 U.S. 217, 232–33 (1960) (describing the implementing regulations of the INA that govern the authority to issue administrative warrants). Courts in this district have concluded that "a [Form] I-200 cannot be used to effectuate an arrest before an NTA has been issued." *Yeleshev v. Larocco*, No. 26-CV-2294, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026); *see also Okeke v. Maldonado*, No. 26-CV-2714, 2026 WL 2056904, at *4–5 (E.D.N.Y. July 16, 2026) (concluding that ICE had no authority to arrest the petitioner where ICE issued and served the NTA eleven hours after arresting him pursuant to a Form I-200 warrant); *Parada Cruz v. Mullin*, Nos. 26-CV-1110, 26-

CV-1122, 2026 WL 1027441, at *10–12 (E.D.N.Y. Apr. 16, 2026) (collecting cases); *Aparicio v. Genalo*, No. 26-CV-1411, 2026 WL 698872, at *4–5 (E.D.N.Y. Mar. 12, 2026); *Meza v. Francis*, No. 26-CV-2722, 2026 WL 1734903, at *2–3 (E.D.N.Y. June 16, 2026); *Arango v. Genalo*, No. 25-CV-6720, 2025 WL 3637500, at *2 (E.D.N.Y. Dec. 16, 2025). According to the regulation, "[t]he NTA begins the removal process, and at that time or after its issuance, the [g]overnment can then effectuate [an individual's] arrest, and, if necessary, detention, until removal proceedings are completed." *Gopie v. Lyons*, No. 25-CV-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 157–58 (2021)).

DHS did not issue a valid NTA before it arrested the petitioner under the Form I-200 warrant. While ICE issued an NTA and the Form I-200 warrant on May 13 (ECF No. 9-2 ¶¶ 13, 15), the NTA did not include the date and time that the petitioner was to appear for removal proceedings. (*See* ECF No. 9 at 15.) *See Pereira v. Sessions*, 585 U.S. 198, 202 (2018) ("A notice that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under section 1229(a)." (citation modified)); *E.T.G. v. Genalo*, No. 26-CV-4274, 2026 WL 2140351, at *3 (E.D.N.Y. July 25, 2026) ("That NTA, however, is invalid because it does not include a place, date, or time to appear."). DHS did not reissue a valid, superseding NTA until after it arrested the petitioner on May 15. (ECF No. 9-2 ¶ 21.) Citing *Ramirez v. Genalo*, No. 26-CV-3229, 2026 WL 1815771, at *4 (E.D.N.Y. June 24, 2026), the government argues that "[a]n NTA served during post-arrest processing on the same day as an arrest is sufficiently contemporaneous to meet the 'at the time of' standard." (ECF No. 9 at 6.) But "[t]here is no 'leeway'" in the text of 8 C.F.R. § 1236.1(b)(1); ICE may only arrest a noncitizen "at the time" or after the NTA is issued. *Parada Cruz*, 2026 WL 1027441, at *2. "If ICE wants to use a warrant, it must have a valid NTA in place." *Id.* In this case, DHS agents

met the petitioner when he was due to be released from Nassau County Correctional Center, “informed him of the warrant,” “placed him under arrest” and transported him for processing, all without issuing a valid NTA. (ECF No. 9-2 ¶¶ 17–21.) Under these circumstances, the Form I-200 warrant was invalid when the agents arrested the petitioner. *Yeleshev*, 2026 WL 1353806, at *2 (“Although the time frame between the issuance of the arrest warrant and the issuance of the NTA here was relatively short, the law nonetheless does not permit what occurred.”); *Aparicio*, 2026 WL 698872, at *4–5 (concluding that the petitioner’s procedural due process rights were violated where ICE arrested Aparico pursuant to a Form I-200 warrant, brought him to an intake facility, then issued the NTA); *Meza*, 2026 WL 1734903, at *2 (“But even accepting that the time frame between the issuance of the arrest warrant and the issuance of the NTA was relatively short, there is no leeway; if ICE wants to use a warrant, it must have a valid NTA in place.” (citation modified)).

“[I]f a Form I-200 Warrant is without effect, it cannot serve as the predicate ‘warrant issued by the Attorney General’ necessary to justify arrest and detention under Section 1226(a).” *Okeke*, 2026 WL 2056904, at *4 (quoting 8 U.S.C. § 1226(a)). Therefore, “‘when ICE arrested [the petitioner] they had no authority to do so,’ and the law ‘does not permit what occurred,’” *Meza*, 2026 WL 1734903, at *2 (first quoting *Gopie*, 2025 WL 3167130, at *1; and then quoting *Yeleshev*, 2026 WL 1353806, at *2).

**II. Due Process**

The petitioner also asserts that ICE denied him procedural due process under the Fifth Amendment when it arrested him without a valid warrant. (ECF No. 1 ¶¶ 118–23; ECF No. 10 at 5–7.) To determine whether the government’s process comports with due process,, the Court applies the *Mathews v. Eldridge* balancing test. *Mathews v. Eldridge*, 424 U.S. 319 (1976);

*Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (applying *Mathews*). The Court considers: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first *Mathews* factor — the private interest affected by the government's action — favors the petitioner whose interest is "the most significant liberty interest there is — the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. The second *Mathews* factor — the value of additional safeguards — also favors the petitioner. The procedures defined by Section 1226(a) and the INA's implementing regulations are designed to minimize "the risk of an erroneous deprivation." *See Mathews*, 424 U.S. at 335. When DHS fails to follow these "established and mandatory procedures," it creates a "very high risk of an erroneous deprivation of Petitioner's liberty interests." *Okeke*, 2026 WL 2056904, at *5; *see also Aparicio*, 2026 WL 698872, at *5; *Mejia Huerta v. Noem*, No. 26-CV-1248, 2026 WL 555014, at *3 (S.D.N.Y. Feb. 27, 2026) ("[T]he procedures employed by ICE officers in connection with Petitioner's arrest and detention created a high risk of the erroneous deprivation of his liberty interest. The record in this case demonstrates that Petitioner was arrested without a proper warrant.").

With respect to the third *Mathews* prong, the government generally has an interest in detaining people under 8 U.S.C. § 1226(a) if detention "advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas v. Davis*, 533

U.S. 678, 690 (2001)). According to the government, the petitioner is a danger to the community because he was convicted of a narcotics offense. (ECF No. 9 at 33.) But the government has no legitimate interest in detaining someone illegally — in this case by detaining the petitioner in violation of Section 1226(a). *Cf. Gopie*, 2025 WL 3167130, at *3 ("ICE does not have free-ranging ability to arrest and detain people.") Nor would it have been at all burdensome for DHS to do what the statute requires. DHS interviewed the petitioner on May 13, 2026, and started the process of issuing an NTA and warrant that the same day. (*See* ECF No. 9-2 ¶¶ 12–15.) At that point, the agents knew that the petitioner would be released two days later, on May 15th. (*See id.* ¶ 16.) The government does not explain why it did not comply with Section 1226(a), or why the Court should excuse its failure to do so.

Accordingly, ICE's warrantless arrest of the petitioner violated Section 1226(a) and the Fifth Amendment. "That is a dispositive and independent basis to grant the writ," *Gopie*, 2025 WL 3167130, at *2, so the Court does not address whether the petitioner's custody review was proper, *Okeke*, 2026 WL 2056904, at *6 ("Respondents argue that they have complied with the custody determination procedures required by Section 1226(a) and thus are permitted to continue to detain him. But since the Court has found the arrest was unlawful to begin with, it could not have triggered Respondents' detention authority under Section 1226(a), and thus Respondents' authority to continue to detain Petitioner without a bond hearing is irrelevant.").[7] The "typical

[7] The government argues that the Court lacks jurisdiction to review the custody determination under 8 U.S.C. § 1226(e) and that the petitioner must exhaust his administrative remedies before challenging his custody determination in federal court. (ECF No. 9 at 4–6.) The Court finds that the petitioner is entitled to release because DHS arrested him unlawfully, and does not address the sufficiency of the custody determination. Accordingly, the government's jurisdiction and exhaustion arguments are moot. *Okeke*, 2026 WL 2056904, at *6; *see also Meza*, 2026 WL 1734903, at *3 ("Exhausting administrative remedies does nothing to cure a procedurally defective arrest. Accordingly, it is not necessary that petitioner seek a re-determination of custody by an immigration judge prior to seeking habeas relief from this Court." (citation modified)).

remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484–85 (1973) ("[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody;" it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it."); *Okeke*, 2026 WL 2056904, at *6 (ordering release after finding that ICE unlawfully executed a Form I-200 warrant before issuing an NTA); *Yeleshev*, 2026 WL 1353806, at *8 (ordering release based on "two independent bases to grant the writ — the failure to initiate removal proceedings before or at the time of effectuating [the petitioner's] arrest, and the use of an I-200 arrest warrant that was legally invalid").

**CONCLUSION**

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1), is granted.

The government is directed to release the petitioner from custody immediately and within 24 hours of this Order. The government must return to the petitioner any and all funds and/or property that were seized from the petitioner at the time of arrest. The government is directed to submit a letter to the Court certifying compliance with this Order within 48 hours of this Order. The Court further orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a). This order includes "an injunction barring deprivation [of any] of the [petitioner's] rights without the requisite procedural protections." *Khabazha v. U.S. Immigr. & Customs Enf't*, 25-CV-5279, 2025 WL 3281514, at *8–9 (S.D.N.Y. Nov. 25, 2025) (ordering that the government release the petitioner from "restrictions on his liberty imposed as a result of his

unlawful [detention] . . . including the ankle monitor and reporting requirements" and return him to the "status quo ante."). The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
August 28, 2026